DOMINICK C. CAPOZZOLA (State Bar No. 217381)
dominick.capozzola@ogletreedeakins.com
JOCELYN A. MERCED, *Pro Hac Vice*
jocelyn.merced@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone:    973.656.1600
Facsimile:    973.656.1611

ROBERT R. ROGINSON (State Bar No. 185286)
robert.roginson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:    213.239.9800
Facsimile:    213.239.9045

CAROLYN B. HALL (State Bar No. 212311)
carolyn.hall@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300, One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:    415.442.4870

Attorneys for Defendant
SIMPLEXGRINNELL LP

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DON C. BENNETT, COMERLIS DELANEY, GARY ROBINSON, DARREN SCOTT, and JON HOTZLER, , on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SIMPLEXGRINNELL LP, <br><br> Defendant. | Case No. 11-cv-01854-JST (NJV) <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU AND EXPERT REPORT OF DOUGLAS NAREAU; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:            January 23, 2014 <br> Time:            2:00 p.m. <br> Place:           Courtroom 9, 19th Floor <br><br> Complaint Filed:                            04/18/2011 <br> First Amended Complaint Filed:        06/27/2011 <br> Second Amended Complaint Filed:    06/26/2012 <br> Third Amended Complaint Filed:      07/17/2013 <br><br> Trial Date:      None Set <br> Judge:          Honorable Jon S. Tigar |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 23, 2014 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Jon S. Tigar, 450 Golden Gate Avenue, San Francisco, California, Courtroom 9, Defendant SimplexGrinnell, LLP ("Defendant") will move for an order striking Plaintiffs' proposed expert witness Douglas Nareau and the expert report of Douglas Nareau pursuant to Civil Local Rules 7-2-7-5, Federal Rules of Civil Procedure ("FRCP") 37(c) and 26(a), and Federal Rules of Evidence ("FRE") 702 and 403.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the Declaration of Robert R. Roginson concurrently filed herewith, and all exhibits attached to that declaration, and the pleadings, records, and papers on file in this action, and upon such other oral and documentary evidence as may be presented at or before the hearing on this matter.

DATED: December 19, 2013

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:     */s/ Robert R. Roginson*

Dominick C. Capozzola
Robert R. Roginson
Carolyn B. Hall
Jocelyn A. Merced, *Pro Hac Vice*

Attorneys for Defendant SimplexGrinnell LP

16429059.6

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 1

III.  ARGUMENT ......................................................................................................... 5

      A.    The Expert Report of Douglas G. Nareau Does Not Constitute a
            "Written Report" Mandated By Federal Rule of Civil Procedure
            26(a)(2)(B).................................................................................................... 5

            1.    Nareau's Report Lacks A Statement Identifying the Facts
                  or Data Considered in Forming His Opinions. ............................... 6

            2.    Nareau's Report Does Not Contain Any Exhibits That
                  Will Be Used to Summarize or Support His Opinions. ................... 7

      B.    Mr. Nareau's Opinions Do Not Meet The Standards For Expert
            Testimony. ................................................................................................... 7

            1.    Mr. Nareau Is Not Qualified to Offer Expert Opinion on
                  Testing and Inspection. ................................................................... 8

            2.    Mr. Nareau's Proposed Expert Opinions are Not Based on
                  Sufficient Facts or Data and Are Not Reliable. ............................. 9

      C.    Nareau's Report Contains Improper Legal Conclusions. ............................. 11

      D.    Nareau's Report Should Be Stricken Because It Lacks Foundation. ............ 14

            1.    Nareau's Report Is Conclusory. ....................................................... 14

            2.    Nareau's Report Lacks Foundation Because it Contradicts
                  Sworn Deposition Testimony. .......................................................... 15

IV.   CONCLUSION ....................................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aguilar v. International Longshoremen's Union Local No. 10,*
   966 F.2d 443 (9th Cir.1992) ................................................................... 11

*Chartier v. Brabender Technologie, Inc.,*
   2011 WL 4732940 (D. Mass., Oct. 5, 2011) ........................................... 15

*Crow Tribe of Indians v. Racicot,*
   87 F.3d 1039 (9th Cir. 1996) ................................................................. 13

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579 (1993) .................................................................... 1, 8, 14

*Foster v. Arcata Associates, Inc.,*
   772 F.2d 1453 (9th Cir. 1985) ............................................................... 15

*Guidroz-Brault v. Missouri Pac. R.R. Co.,*
   254 F.3d 825 (9th Cir. 2001) ................................................................... 7

*Hangarter v. Provident Life & Accident Ins. Co.,*
   373 F.3d 998 (9th Cir. 2004) ................................................................. 11

*Headley v. Ferro Corp.,*
   630 F. Supp. 2d 1261 (W.D. Wash. 2008) .............................................. 5

*Jeffrey v. United States,*
   2004 WL 390810 (W.D.Tex., Jan. 8, 2004) ........................................... 15

*Kennedy v. Allied Mut. Ins. Co.,*
   952 F.2d 262 (9th Cir. 1991) ................................................................. 15

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ................................................................................ 7

*Maffei v. Northern Ins. Co.,*
   12 F.3d 892 (9th Cir. 1993) ................................................................... 14

*Mukhtar v. Cal. State Univ.,*
   299 F.3d 1053 (9th Cir. 2002) ............................................................. 7, 8

*Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.,*
   922 F.2d 220 (5th Cir. 1991) ................................................................. 14

*Owen v. Kerr-McGee Corp.,*
   698 F.2d 236 (5th Cir. 1983) ................................................................. 11

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

*Pinal Creek Group v. Newmont Mining Corp.*,
    352 F. Supp. 2d 1037 (D. Ariz. 2005) ............................................................. 14

*Radobenko v. Automated Equipment Corp.*,
    520 F.2d 540 (9th Cir. 1975) ........................................................................ 15

*Sawyer v. Southwest Airlines Co.*,
    243 F. Supp. 2d 1257 (D. Kan. 2003) ........................................................... 11

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ...................................................................... 14

*Smith v. Ingersoll-Rand Co.*,
    214 F.3d 1235 (10th Cir. 2000) .................................................................... 11

*Smith v. Pac. Bell Tel. Co.*,
    649 F. Supp. 2d 1073 (E.D. Cal. 2009) ........................................................... 9

*Synthes Spine Co., L.P. v. Walden*,
    232 F.R.D. 460 (E.D. Pa. 2005) ...................................................................... 6

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ........................................................................ 14

*U.S. v. Sierra Pacific Industries*,
    2011 WL 2119078 (E.D. Cal., May 26, 2011) .................................................. 6

*Use Techno Corp. v. Kenko USA, Inc.*,
    2007 WL 4169487 (N.D. Cal., Nov. 20, 2007) ................................................. 5

*Viterbo v Dow Chemical Co.*,
    826 F.2d 420 (5th Cir. 1987) .......................................................................... 8

*Walton v. US Marshals Service*,
    492 F.3d 998 (9th Cir. 2007) ........................................................................ 14

**STATUTES**

California Labor Code Section 1771 ............................................................ 2, 12, 13

California Labor Code Section 1720 ...................................................................... 13

**RULES**

Federal Rules of Civil Procedure, Rule 26… ......................................................... 5

Federal Rules of Civil Procedure, Rule 26(a) .................................................... 1, 5

Federal Rules of Civil Procedure, Rule 26(a)(2)(B) ..................................... passim

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

Federal Rules of Civil Procedure, Rule 26(a)(2)(B)(ii)...............................................................6, 7

Federal Rules of Civil Procedure, Rule 26(a)(2)(B)(iii) ................................................................7

Federal Rules of Civil Procedure, Rule 37(c)(1)........................................................................5, 6

Federal Rules of Civil Procedure, Rule 56(c)(4) ..........................................................................14

Federal Rules of Evidence § 403.............................................................................................1, 8

Federal Rules of Evidence § 702...............................................................................1, 7, 8, 9, 11

Federal Rules of Evidence § 704...............................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On or about September 30, 2013, Plaintiffs Don C. Bennett, Comerlis Delaney, Gary Robinson, Darren Scott, and John Hotzler (collectively, "Plaintiffs") submitted their Expert Report of Douglas G. Nareau ("Nareau Report" or "Report").   As this Motion clearly demonstrates, Mr. Nareau attempts to improperly supplant the role of the judge by making significant determinations of law, and for that reason alone, his Report should be stricken.   Mr. Nareau also fails to comply with the necessary disclosure requirements for a "written report" mandated by FRCP 26(a), such as identifying the facts or data considered by him in forming his opinions and including any exhibits to summarize or support his opinions.   Additionally, Nareau's Report contradicts his sworn deposition testimony.

Defendant's counsel took the deposition of Mr. Nareau on November 4, 2013.   Mr. Nareau purports to be an expert on the subject of testing and inspection of fire alarm and sprinkler systems and whether workers who test and inspect fire alarm and sprinkler systems on projects paid for by public funds within California should be paid prevailing wages.   However, the Court should strike Plaintiffs' proposed expert witness Douglas Nareau and the Nareau Report because: (1) the Nareau Report does not constitute a "written report" mandated by FRCP 26(a)(2)(B); (2) Mr. Nareau's proposed opinions do not meet the evidentiary standards in FRE 702 and 403 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993); (3) Mr. Nareau improperly attempts to usurp the role of the judge by deciding questions of law; and (4) the Nareau Report lacks foundation because it is conclusory and contradicts his sworn deposition testimony.

## II.    STATEMENT OF FACTS

Plaintiffs Don Bennett, Gary Robinson, Comerlis Delaney, Darren Scott, and Jon Hotzler all worked for Defendant as field employees performing services on Defendant's life safety systems.   On July 17, 2013, Plaintiffs filed a Third Amended Complaint alleging that Defendant failed to comply with its obligations under the California Labor Prevailing Wage Law. (*See generally*, Dkt. #125.)   In their first claim for relief, Plaintiffs alleged that Defendant violated

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

1  Section 1771 of the California Labor Code by failing to pay them prevailing wages for work
2  performed on public works projects.  (*Id.* at ¶ 46.)

3      On August 28, 2013, Plaintiffs filed their pending Motion for Partial Summary Judgment,
4  which is currently scheduled to be heard on January 23, 2014. (Dkt. #137.)  Plaintiffs seek an order
5  from this Court finding that "all testing and inspection of fire alarm and sprinkler systems . . . on
6  'public works' projects in the state of California . . . is entitled to payment of prevailing per diem
7  wages." (Dkt #137 at p. 2.)   In connection with their Partial Motion for Summary Judgment,
8  Plaintiffs submitted the Declaration of Douglas Nareau. (Dkt. #138.)[1]  After filing their Motion for
9  Partial Summary Judgment, Plaintiffs served their Expert Report of Douglas Nareau ("Nareau
10  Report") on or about September 30, 2013.  (Nareau Report, Declaration of Robert R. Roginson
11  ("Roginson Decl."), Ex. 1.))

12      In the Nareau Report, Douglas Nareau opines: (1) that "Work done doing the required
13  testing and inspection is covered prevailing wage work," (2) that "all required testing and
14  inspection work performed as part of any installation, maintenance, or repair job is public work and
15  workers doing such work must be paid prevailing wage," and (3) that "workers who test and
16  inspect fire alarm sprinkler systems on public works in the State of California must be paid
17  prevailing wage." (Roginson Decl., Ex. 1, ¶¶ 14, 19, and 23).  Mr. Nareau provides no explanation
18  or analysis as to how he arrived at these improper legal conclusions.  Furthermore, the Nareau
19  Report fails to identify what information was furnished to him by Plaintiffs' counsel to formulate
20  his opinions.  Rather, the Nareau Report refers only to the select number of deposition excerpts and
21  documents that he relies on as authority for various points that he makes in report.  Although
22  Nareau's Report refers to unidentified Collective Bargaining Agreements ("CBAs") that he
23  purportedly reviewed in forming his opinions, those unidentified CBAs were not attached to the
24  Nareau Report, have not been produced to Defendant (despite repeated requests), and are not
25  described in a manner sufficient to enable Defendant to identify them, despite the statutory
26  obligation to do so.

27
28

---

[1]      On November 7, 2013, Defendant filed Evidentiary Objections to the Declaration of
Douglas Nareau in Support of Plaintiffs' Motion for Partial Summary Judgment (Dkt. #171-2.)

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS
NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

Defendant's counsel took the deposition of Mr. Nareau on November 4, 2013.  At his deposition, Mr. Nareau testified that he is not a licensed contractor, has no personal experience as a contractor, has no personal experience conducting testing or inspection of fire alarm or sprinkler systems at a construction project, has no formal training in testing or inspection fire alarm systems, has not attended classes for testing or inspection of fire alarm or sprinkler systems, has not supervised people doing inspection, and has never worked as an architect, or systems designer for fire alarm or sprinkler systems.

In a futile attempt to qualify himself as an "expert" on testing and inspection of fire alarm and sprinkler systems and whether workers who test and inspect fire alarm systems on projects paid for by public funds within California should be paid prevailing wages, Mr. Nareau misstates what he actually did at the State of California ("DLSE").  Specifically, it became convincingly clear during his deposition that during his tenure at the DLSE, which is the "enforcement" agency, he was purely a litigation attorney who tried all of their prevailing wage cases.  Mr. Nareau did not work for the DIR.  Mr. Nareau further admitted that it is the Department of Industrial Relations, not the DLSE that makes determinations as to whether a particular project or type of work is subject to the prevailing wage laws.  Even though in his Report Mr. Nareau stated that he made the "coverage determinations" in relation to the litigation he was handling, Mr. Nareau testified at his deposition, in contradiction to his Report, that he did not issue the coverage determinations as to whether or not a particular type of work or a project was covered by prevailing wages in accordance with the regulations in the California Code of Regulations.  Specifically, Mr. Nareau testified as follows:

> Q. When you refer to coverage determinations, the regulations provide means by which the director can make coverage determinations, correct?
>
> A. That's correct.
>
> Q. You're familiar with that process?
>
> A. I am.
>
> Q. And under the regulations, the director of the Department of Industrial Relations -- and if I use the term "DIR," would you know what I mean?

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

A. Yes.

**Q. That the director of DIR could make a determination as to whether or not a particular type of work or a project was covered by prevailing wages or not, correct?**

**A. Correct.**

Q. And those are governed by the regulations in the California Code of Regulations?

A. Yes.

*** 

**Q. You did not at any time work for the office of the director's legal unit, correct?**

**A. That's correct.**

Q. **And it was the director's office that would issue the coverage determinations that are provided for under the regulations?**

A. **That's correct.**

Q. **And at no time did you work in that particular unit issuing those types of coverage determinations by the director**?

**A.  That's correct**.

(See Deposition of Douglas Nareau, at 34:8-25 and 36:5-16 (Roginson Decl. Ex. 2) (Emphasis added.)

Accordingly, as explained in greater detail below, Douglas Nareau and the Nareau Report should be stricken because Mr. Nareau is not qualified to offer expert opinion on testing and inspection about which he opines, and the Nareau Report fails to satisfy the standard of admissibility for expert testimony and fails to meet the disclosure requirements set forth in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

///

///

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

III.     **ARGUMENT**

A.     **The Expert Report of Douglas G. Nareau Does Not Constitute a "Written Report" Mandated By Federal Rule of Civil Procedure 26(a)(2)(B).**

FRCP 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial*, unless the failure was substantially justified or is harmless." (Emphasis added.)   In this case, the Nareau Report fails to provide disclosures mandated by FRCP 26(a)(2)(B).  Accordingly, the Court should strike Mr. Nareau and his report in its entirety.

FRCP 26(a)(2)(B) requires that, with respect to any testifying experts, parties must produce "a written report - prepared and signed by the witness."  Specifically, FRCP 26(a)(2)(B) mandates that "[t]he report must contain" the following:

> (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii)     the facts or data considered by the witness in forming them;
>
> (iii)     any exhibits that will be used to summarize or support them;
>
> (iv)     the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi)     a statement of the compensation to be paid for the study and testimony in the case.

"The specific purpose of the requirement to exchange expert reports is to eliminate unfair surprise to the opposing party and to conserve resources."  *Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1266 (W.D. Wash. 2008).  "Where a party without substantial justification fails to disclose information required by Rule 26…, and that failure is not harmless, the party may not use that evidence at trial, at a hearing, or on a motion." *See Use Techno Corp. v. Kenko USA, Inc*.,

2007 WL 4169487, *2 (N.D. Cal., Nov. 20, 2007); Fed.R.Civ.P. 37(c)(1).  As set forth below, the Nareau Report fails to satisfy subsections (ii) and (iii) and is, therefore, inadmissible.

### 1.  Nareau's Report Lacks A Statement Identifying the Facts or Data Considered in Forming His Opinions.

FRCP 26(a)(2)(B)(ii) requires an expert's written report to identify "the <u>facts or data considered</u> by the witness in forming" his opinions.  (Emphasis added.)  "[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert from whatever source, that contains factual ingredients.  The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." 2010 Advisory Committee Notes to Rule 26 (a)(2)(B).  The term "considered" means that the report must include "any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005); *U.S. v. Sierra Pacific Industries*, 2011 WL 2119078, *11 (E.D. Cal., May 26, 2011) (citing *Walden*).

The Nareau Report is grossly deficient.  Specifically, the Nareau Report fails to identify what information was furnished to Mr. Nareau by Plaintiffs' counsel, such that neither the Court nor Defendant can determine what he considered in formulating his opinions.  Nareau's Report refers only to a select number of deposition excerpts and documents that he relies on as authority for various points that he makes in his Report. (Roginson Decl., Ex. 1, ¶¶ 11, 29 and 31.)  Further, it is impossible to determine from his report whether Nareau considered the complete deposition testimony of the unidentified witness transcripts cited in his report, or if Plaintiffs' counsel conveniently cherrypicked deposition excerpts and exhibits that they felt were favorable.  Moreover, Nareau's Report does not cite to any other documents, besides unidentified CBA's.  Notwithstanding, Mr. Nareau testified that he did not review these unidentified CBA's in their entirety. (*See* Roginson Decl., Ex. 2 at 74:13-25.)  Tellingly, ***Mr. Nareau also testified at his deposition that his Report does not identify specifically the facts or data that he considered in***

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

*rendering his opinion that testing and inspection work was covered wage work*.  (*Id*. at 73:12-19.)

In sum, the Nareau Report is wholly deficient and fails to comply with FRCP 26(a)(2)(B)(ii).

### 2.   Nareau's Report Does Not Contain Any Exhibits That Will Be Used to Summarize or Support His Opinions.

FRCP 26(a)(2)(B)(iii) requires an expert's "written report" to include "any exhibits that will be used to summarize or support" his opinions.  Here, the only exhibit to Nareau's Report is his curriculum vitae.  As stated above, Mr. Nareau refers to unidentified CBAs in his report that allegedly support his opinions.  However, Mr. Nareau fails to attach these unidentified CBAs to his Report or to otherwise produce them.  In order for the Nareau Report to be admissible at trial, it needed to meet the requirements of FRCP 26(a)(2)(B).  As set forth above, the Nareau Report fails to satisfy the mandates of FRCP 26(a)(2)(B) and, therefore, is not admissible at trial and should be stricken.

### B.   Mr. Nareau's Opinions Do Not Meet The Standards For Expert Testimony.

Although a party may offer expert testimony in support of their claims, such testimony is proper only where it satisfies the prerequisites of Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, ***a witness qualified as an expert by knowledge, skill, experience, training, or education,*** may testify thereto in the form of an opinion or otherwise, ***if*** (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, ***and*** (3) the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.)  Expert testimony must also be relevant and reliable, and it must relate to some form of specialized knowledge.  *Guidroz-Brault v. Missouri Pac. R.R. Co*., 254 F.3d 825, 829 (9th Cir. 2001).  It may not include unsupported speculation and subjective beliefs.  *Id.*

It is incumbent on the Court to perform a "gatekeeping" function prior to admitting or considering expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999); *see also Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1062 (9th Cir. 2002) (emphasizing the trial court's "'special obligation' to determine the relevance and reliability of an expert's testimony [which] is vital to ensure accurate and unbiased decision-making by the trier of fact").  This gatekeeping

obligation arises from the fact that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595; *see also Mukhtar,* 299 F.3d at 1063 ("Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude…").   The burden rests on a party seeking to admit purported expert testimony to demonstrate each element.

As set forth below, Nareau's Report does not establish that he is qualified to offer expert opinion on testing and inspection about which he opines and his proposed expert opinions are not based upon sufficient facts or data and are not reliable.  Even if Mr. Nareau's proposed testimony could somehow survive this Court's threshold scrutiny under FRE 702 (which it cannot), then it would be subject to further review and preclusion under FRE 403.  *See, e.g., Daubert*, 509 U.S. at 595. "[E]xpert evidence can be both powerful and quite misleading. ... Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  Accordingly, the Court should strike Mr. Nareau and his report, in its entirety.

## 1.   Mr. Nareau Is Not Qualified to Offer Expert Opinion on Testing and Inspection.

Mr. Nareau purports to be an expert on the subject of testing and inspection of fire alarm and sprinkler systems and whether workers who test and inspect fire alarm systems on projects paid for by public funds within California should be paid prevailing wages.  In his Report, Nareau attests that "The testing and inspection of a fire alarm and sprinkler system is done on a routine and recurring basis throughout the life of the system to preserve and protect it and to insure that it continues to operate and to keep the public building or structure in which it is located in a safe and continuously usable condition."  (Roginson Decl., Ex. 1, ¶ 22).  Further, he attests "testing and inspection work on an electrical system such as a fire alarm system is incidental to electrical work typically done by electricians or sound and communications technicians on that system.  And the

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

worker would have to be paid the appropriate prevailing wage rate for that work from the appropriate DRI prevailing wage determination…" (*Id*. at ¶ 27.)

However, Mr. Nareau is not qualified to make statements regarding the role testing and inspection plays on a construction project.  Specifically, Mr. Nareau admitted at his deposition that he is not a licensed contractor, has no personal experience as a contractor, has no personal experience conducting testing or inspection of fire alarm or sprinkler systems at a construction project, has no formal training in testing or inspection fire alarm systems, has not attended classes for testing or inspection of fire alarm or sprinkler systems, has not supervised people doing inspection, and has never worked as an architect, or systems designer for fire alarm or sprinkler systems. (Roginson Decl., Ex. 2, at 39:16-21, 40:21-41:7, 42:20-44:20, and 87:13-23).  However, in his Report, he makes several conclusory but unsupported statements regarding the role testing and inspection plays in a construction project. *See e.g*. Nareau Report at ¶¶ 11-14, 19, 21-22, and 27.  In the end, it is clear that Mr. Nareau is simply an attorney who may have tried prevailing wage cases; but he is by no means qualified under the federal standards to serve as an expert on these matters.  It is clear that Mr. Nareau is not qualified to offer an expert opinion on testing and inspection and, as such, the Court should strike Mr. Nareau and his report, in its entirety.

### 2.   Mr. Nareau's Proposed Expert Opinions are Not Based on Sufficient Facts or Data and Are Not Reliable.

Reliance on incomplete facts and data may make an expert opinion unreliable because an expert must "know[] of facts which enable him to express a reasonably accurate conclusion." *Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073, 1096-1097 (E.D. Cal. 2009) (refusing to admit testimony of an expert in part because expert's report was "based on incomplete facts and selective documents").  As set forth above, it is far from clear what facts and data Plaintiffs supplied Mr. Nareau with to formulate his opinion.  Unless and until Mr. Nareau meets all his obligations under FRCP 26(a)(2)(B), the Court should strike Mr. Nareau and his Report for failing to comply with FRE 702.

More fundamentally, Mr. Nareau does not attest to having the actual facts or data necessary to make a relevant analysis of whether workers who test and inspect fire alarm and sprinkler

systems on projects paid for by public funds within California should be paid prevailing wages. Specifically, in his Report he states that "***Based on his review of the CBAs filed with the DIR*** [California Department of Industrial Relations]", "[w]orkers who test and inspect fire alarms must be paid the relevant communications and sound technicians rate (CST)", and "[w]orkers who test and inspect sprinkler products that are part of the fire alarm system must be paid the relevant sprinkler fitter rate…" (Roginson Decl., Ex. 1, at 6:8-15.) (Emphasis added.)  Further, his Report states that "[w]ork done doing the required resting and inspection [of a fire alarm and sprinkler system] is covered prevailing wage work." (*Id*. at 14.)  ***However, at his deposition, Mr. Nareau testified that he did not review all of the CBAs filed with the DIR***. (Roginson Decl., Ex. 2, at 74:18-25, 75:24-25.)  In fact, at his deposition, Mr. Nareau was shown a scope of work provision from a CBA from the DIR website, which states "Work of that nature [a number of pieces of tasks that are performed by a sprinkler fitter] that is generated by inspection or testing of a fire protection system, ***but not the inspection or testing itself***, is covered by this agreement." (*Id*. at 138:19-139:6.) (Emphasis added.)  This CBA clearly states that it <u>does not</u> cover stand-alone testing and inspection.

Furthermore, Mr. Nareau testified that he did not rely upon any coverage determinations issued by the DIR for his conclusions in his report. (*Id*. at 66:19-67:17.)  Later, ***Mr. Nareau testified that he did not identify or find one coverage determination issued by the DIR that supported the position that testing and inspection was not covered work***. (*Id*. at 72:23-73:1.)  ***Mr. Nareau further testified that it has always been the position of the DLSE and the DIR that testing and inspection is covered by the prevailing wage statutes***. (*Id*. at 68:3-19 and 99:8-100:11.)  However, later at his deposition, Mr. Nareau was shown six coverage determinations that that were issued by the DIR, which concluded that installation, monitoring, testing, and/or inspection performed at various construction projects was not a public work. (Roginson Decl., Ex. 2.)

Accordingly, Mr. Nareau failed to review and take into consideration (and/or intentionally ignored) all relevant CBA's filed with the DIR and all relevant coverage determinations issued by the DIR relating to testing and inspection during the formulation of his opinion.  Therefore, Mr.

Nareau's conclusions that inspection and testing is covered work and must be paid at prevailing wage rates are both unreliable and irrelevant.  Accordingly, the Court should strike Mr. Nareau and his Report, in its entirety.

### C.     Nareau's Report Contains Improper Legal Conclusions.

Mr. Nareau's opinion relates to legal matters—not factual matters—and therefore it is not helpful in any respect to the finder of fact.  Matters of law are "inappropriate subjects for expert testimony."  *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (upholding district court's exclusion of expert legal opinion as "utterly unhelpful"); *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law").

Rule 702 of the Federal Rules of Evidence states that expert testimony is proper "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Expert testimony, however, may not include improper legal opinions, and "in no instance can a witness be permitted to define the law of the case."  *Smith v. Ingersoll-Rand Co*., 214 F.3d 1235, 1246 (10th Cir. 2000) (citation omitted). "While an expert may be called upon to aid the [trier of fact] in understanding the facts in evidence even though reference to those facts is couched in legal terms," expert testimony may not "attempt[] to define the legal parameters within which the [trier of fact] must exercise its fact-finding function." *Id.*  The Advisory Committee notes to Rule 704 of the Federal Rules of Evidence make clear that opinions which merely give legal conclusions are not permitted.  See Fed. R. Evid. § 704; *Owen v. Kerr-McGee Corp*., 698 F.2d 236, 239-240 (5th Cir. 1983); *Sawyer v. Southwest Airlines Co*., 243 F. Supp. 2d 1257, 1268-1269 (D. Kan. 2003).

Nareau's Report is replete with improper legal conclusions.  For example, he <u>opines</u> that:

- "Based on my experience, testing and inspection work on an electrical system such as a fire and sprinkler system, is incidental to electrical work done by electricians or sound and communications technicians on that system. ***Workers who do this work***

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

*must be paid the below referenced appropriate prevailing wage rate as specified in the relevant DIR prevailing wage determination*." (Roginson Decl., Ex. 1, at ¶ 11.) (Emphasis added.)

- "Required testing and inspection of fire alarm and sprinkler system is often done pursuant to detailed  codes and standards laid out in certain sections in an associated manual, National Fire Protection Association (NFPA) 72 for fire alarms and NFPA 25 for sprinkler systems.  *Work done doing the required testing and inspection is covered prevailing wage work*." (Roginson Decl., Ex. 1, at ¶ 14.) (Emphasis added.)

- "The delivery (i.e., installation or repair) of any system to an awarding body requires that the system function correctly and for its intended purpose and thus all required testing and inspection work performed as part of any installation, maintenance, or repair job *is public work and workers doing such work must be paid prevailing wage*." (Roginson Decl., Ex. 1, at ¶ 19.) (Emphasis added.)

- "Labor Code Section 1771 evinces public policy in requiring that the workers of the state are paid prevailing wages in maintaining the state's infrastructure." (Roginson Decl., Ex. 1, at ¶ 20.)

- "Again, I have no doubt that *workers who test and inspect fire alarm sprinkler systems on public works in the State of California must be paid prevailing wage*." (Roginson Decl., Ex. 1, at ¶ 23.) (Emphasis added.)

- "Based on my experience, testing and inspection work on an electrical system such as a fire alarm system in incidental to electrical work typically done by electricians or sound and communications technicians on that system. *The workers who do this work must be paid the appropriate prevailing wage rate for that work from the appropriate DIR prevailing wage rate determination*…" (Roginson Decl., Ex. 1, at ¶ 27.) (Emphasis added.)

- "The determination of the applicable prevailing wage rate for the testing and inspection of a fire alarm system is based on the date the work was performed, the

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

location of the work, the type of product associated with the work (fire alarm or sprinkler) and the appropriate DIR prevailing wage rate determination." (Roginson Decl., Ex.1, at ¶ 28.)

- "*Workers who test and inspect fire alarms must be paid the relevant communications and sound technician rate (CST)* unless the work they perform is done in San Francisco, San Luis Obispo, Santa Barbara or Ventura Counties. For work performed in those counties, workers must be paid the inside wireman (IW) rate." (Roginson Decl., Ex. 1, at ¶ 29(a).) (Emphasis added.)

- "*Workers who test and inspect sprinkler products that are part of the fire alarm system must be paid the relevant sprinkler fitter rate* no matter what county they perform the work." (Roginson Decl., Ex. 1, at ¶ 29(b).) (Emphasis added.)

- "It is my opinion that *any claim that a government contractor is not required to pay prevailing wages for testing and inspection is contrary to any interpretation that I am familiar with* based on my years as a person enforcing or advising compliance personnel enforcing prevailing wage laws.  I and my colleagues have always treated testing and inspection as incidental work in determining whether or not a system is going to work or continue to work as maintained and as noted above, *it would come within the purview of Labor Code Section 1720 for the installation of any fire alarm system or within Labor Code Section 1771 for the maintenance of any system*." (Roginson Decl., Ex. 1, at ¶ 32.)  (Emphasis added.)

- "Any attempt to carve out an exception for testing or inspection as non-covered work would be against public policy." (Roginson Decl., Ex. 1, at ¶ 33.)

- "It is my experience that the various IBEW Collective Bargaining Agreements in the state cover testing and inspection of electrical systems, including fire systems in California.  *As such, they would be controlling as to whether or not the type of work was covered*." (Roginson Decl., Ex. 1, at ¶ 34, ll. 15-17.) (Emphasis added.)

Such opinions are inadmissible. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is not proper for issues of law because the role of experts is to interpret and analyze factual evidence and not to testify about the law); *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898-99 (9th Cir. 1993) (expert's declaration improper).  As a result, legal opinions fall outside the parameters of permissible expert testimony. *See Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005).  "The principle that legal opinion evidence concerning the law is inadmissible is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *Id.* (internal citations omitted). Accordingly, the Court should strike Nareau's Report and proposed testimony because he improperly attempts to usurp the role of the judge by deciding questions of law.

**D.**     **Nareau's Report Should Be Stricken Because It Lacks Foundation.**

**1.**     **Nareau's Report Is Conclusory.**

The burden for laying the proper foundation for admission of the expert testimony is on the party offering the testimony.  *Daubert, supra,* 509 U.S. at 592.  Therefore, the expert must identify the "specific facts" that he relied upon in forming his opinions.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995); *see also*, *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment").  Moreover, under Rule 56(c)(4), an expert declaration must explain and provide reasons for his opinions that are supported by sufficient facts.  *Walton v. US Marshals Service*, 492 F.3d 998, 1008 (9th Cir. 2007).  "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991).

Much of Nareau's Report is conclusory.  Throughout his Report, Mr. Nareau simply states in a conclusory fashion that workers who do testing and inspection work on an electrical system such as a fire alarm system must be paid the appropriating prevailing wage rate and/or work done doing the required testing and inspection of fire alarm and sprinkler systems is covered prevailing

wage work.  However, he provides no <u>specific</u> facts, details, examples, or descriptions to support this conclusion.  Such conclusory statements are insufficient and should be stricken.

        2.      **Nareau's Report Lacks Foundation Because it Contradicts Sworn Deposition Testimony.**

Nareau's Report lacks foundation because it contracts his sworn deposition testimony. *See Jeffrey v. United States,* 2004 WL 390810 at * 4 (W.D. Tex., Jan. 8, 2004) (holding that relying on expert report, without explaining discrepancy between that report and expert deposition testimony, was insufficient to defeat summary judgment); *see also Chartier v. Brabender  Technologie, Inc*., 2011 WL 4732940 (D. Mass., Oct. 5, 2011) (granting defendant's motion to strike plaintiff's expert report on grounds of contradictory deposition testimony).  *Cf. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1462 (9th Cir. 1985) (district court correctly disregarded declaration submitted in opposition to a motion for summary judgment to the extent it was contrary to prior deposition testimony); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975) (same).  Here, in his Report at Paragraph 2, Nareau states: "I reviewed and often made the coverage determinations of the Division prior to litigation as well as made the final classification determinations of what craft, classification or type of worker should be used for any given project." (Roginson Decl., Ex. 1, at ¶ 2, ll. 20-22.)  However, Mr. Nareau testified at his deposition that he did not issue the coverage determinations as to whether or not a particular type of work or a project was covered by prevailing wages in accordance with the regulations in the California Code of Regulations.

Nareau's Report conflicts with his sworn deposition testimony and thus lacks foundation.  Accordingly, Nareau's Report should be disregarded as inadmissible.

///

///

///

///

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' PROPOSED EXPERT WITNESS DOUGLAS NAREAU & EXPERT REPORT OF NAREAU; MEMO OF POINTS & AUTHORITIES SUPPORT THEREOF

**IV.     CONCLUSION**

Based on the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's motion to strike Plaintiffs' proposed expert witness Douglas Nareau and the Report of Douglas Nareau, in its entirety.


DATED:  December 19, 2013                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.



                                             By:     */s/ Robert R. Roginson*
                                                     Dominick C. Capozzola
                                                     Robert R. Roginson
                                                     Carolyn B. Hall
                                                     Jocelyn A. Merced, *Pro Hac Vice*

                                             Attorneys for Defendant SimplexGrinnell LP

                                                                                 16429059.6