Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Raymond C. Fay, *Pro Hac Vice*
rfay@faylawdc.com
FAY LAW GROUP PLLC
1250 Connecticut Avenue, NW Suite 200
Washington, DC  20036
Tel:  (202) 263-4604
Fax:  (202) 261-3508

Bruce E. Menken, *Pro Hac Vice*
bmenken@nyemployeelaw.com
Jason Rozger
jrozger@nyemployeelaw.com
BERANBAUM MENKEN LLP
80 Pine Street, 33rd Floor
New York, NY  10005
Tel:  (212) 509-1616
Fax:  (212) 509-8088

*Attorneys for Plaintiffs and Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DON C. BENNETT, COMERLIS DELANEY, GARY ROBINSON, DARREN SCOTT, JON HOTZLER, GARY CHARLES BACKLUND and JOSE D. VALDEZ on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>SIMPLEXGRINNELL LP,<br><br>      Defendant. | Case No.: 11-01854-JST<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:      September 3, 2015<br>Time:     2:00 p.m.<br>Dept:     9, 19th Floor<br><br>Hon. Jon S. Tigar |

580670.19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on September 3, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 on the 19th Floor of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Class Representative Plaintiffs Darren Scott, Jon Hotzler, Gary Charles Backlund, and Jose D. Valdez ("Plaintiffs" or "Class Representatives") will move, and hereby does move, this Court for the following relief:

(1)     An award to Class Counsel of $1,900,000 in attorneys' fees; and up to $300,000 in actual and expected litigation costs; and

(2)     Service Awards amounting to $5,000.00 for each of the four Class Representatives for their service as Class Representatives in addition to any payment they may otherwise receive as a Class Member.

The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the declarations of Laura L. Ho, Raymond C. Fay, Bruce Menken, Jason Rozger, Darren Scott, Jon Hotzler, Gary Charles Backlund, and Jose Valdez, an Appendix of docketed authorities, the pleadings and papers filed in this case, and on any oral argument this Court permits.

Dated:  June 23, 2015

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

    /s/ James Kan

James Kan

Attorney for Plaintiffs and the Settlement Class

580670.19

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION....................................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.  INTRODUCTION ........................................................................................................1

II.  RELEVANT BACKGROUND ..................................................................................2

    A.  The Court Certified the Class, Appointed Class Counsel, and Granted
        Preliminary Approval of the Settlement..................................................................2

    B.  The Distribution of Notice Has Resulted In a Positive Reaction By the
        Class. ......................................................................................................................3

III.  ARGUMENT ...............................................................................................................4

    A.  California Law Governs the Award of Attorneys' Fees, Costs, and
        Service Awards. ......................................................................................................4

    B.  Class Counsel Are Entitled to Reasonable Attorneys' Fees Under
        California Fee-Shifting Statutes. ...........................................................................4

    C.  The Court Should Apply the Lodestar Methodology to Award Attorneys'
        Fees Under the Settlement......................................................................................5

    D.  The Lodestar Methodology Confirms the Reasonableness of the
        Requested Fee Award. ............................................................................................6

        1.  Class Counsel Have Expended a Reasonable Number of Hours
            Litigating This Action. ..............................................................................6

        2.  Class Counsel's Hourly Rates Are Reasonable and
            Commensurate With the Rates of Similarly Experienced
            Practitioners. ..............................................................................................9

        3.  Class Counsel's Combined Lodestar Is Reasonable Because It Is
            Significantly Less Than the Requested Fee Award...................................10

        4.  The Factors Supporting a Positive Multiplier Are Present Here
            Despite the Fact that Class Counsel Seek an Award Constitutes a
            Negative Multiplier. ................................................................................10

            a.  The Settlement Is an Excellent Result For the Class,
                Which Is Confirmed By the Lack of Objections to Date. .............11

            b.  Class Counsel Provided High Quality Representation of
                the Class.......................................................................................13

             c.  This Action Presented Novel and Complex the Issues
                That Required Skilled Counsel.....................................................15

             d.  The Contingent Risk Assumed by Class Counsel Was
                Significant....................................................................................15

580670.19

5.     Class Counsel's Requested Fee Award Is Reasonable Because It Represents a Negative Multiplier Despite Deserving a Positive Multiplier. ...................................................................................... 16

6.     The Requested Fee Award Is Supported by Lodestar Awards Granted in Other Similar Cases. ............................................... 17

E.    The Reasonableness of the Fee Award Is Confirmed By a Cross-check With the Common Fund Methodology .................................... 18

F.    Class Counsel's Out-of-Pocket Expenses are Reasonable and Compensable. ................................................................................ 21

G.    The Service Awards To The Class Representative Plaintiffs Are Reasonable ....................................................................................... 22

IV.     CONCLUSION ................................................................................................... 25

580670.19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Bedolla. Allen v. Bedolla,*
　Nos. 13-55106, 13-56685, 2015 WL 3461537 (9th Cir. June 2, 2015)............................17, 18

*Asare v. Change Grp. of N.Y., Inc.,*
　No. 12 Civ. 3371(CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)................................23

*In re Bluetooth Headset Products Liab. Litig.,*
　654 F.3d 935 (9th Cir. 2011) ..........................................................................5, 6, 18

*Boeing Co. v. Van Gemert,*
　444 U.S. 472 (1980) .....................................................................................18

*Boyd v. Bank of Am.,*
　No. SACV-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)................................16

*Cicero v. DirecTV, Inc.,*
　No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) .....................................20

*Fischel v. Equitable Life Assurance Soc'y of U.S.,*
　307 F.3d 997 (9th Cir. 2002)............................................................................15

*Harris v. Marhoefer,*
　24 F.3d 16 (9th Cir. 1994)...............................................................................21

*Harris v. Vector Mktg. Corp.,*
　No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .................................23, 24

*Hensley v. Eckerhart,*
　461 U.S. 424 (1983) ......................................................................................5

*In re Heritage Bond Litig.,*
　No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................12

*Hopkins v. Stryker Sales Corp.,*
　No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................................16

*Hopson v. Hanesbrands Inc.,*
　No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)....................................22

*Knight v. Red Door Salons, Inc.,*
　No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)............................................19

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
　624 F.3d 1083 (9th Cir. 2010) ...........................................................................5

*Laguna v. Coverall N. Am., Inc.,*
　753 F.3d 918 (9th Cir. 2014) ........................................................................12, 18

*LeBlanc-Sternberg v. Fletcher,*
　143 F.3d 748 (2nd Cir. 1998).............................................................................9

iv

580670.19

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .......................................................................... 8

*In re NVIDIA Corp. Derivative Litig.*,
  No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ................... 12

*Ozga v. U.S. Remodelers, Inc.*,
  No. C 09-05112 JSW, 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) ..................... 25

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010) ....................................................................................... 5

*Radcliffe v. Experian Info. Solution, Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ........................................................................ 24

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................ 19

*Thieriot v. Celtic Ins. Co.*,
  No. C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ..................... 16

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) .......................................................................... 10

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 23

*Vandervort v. Balboa Capital Corp.*,
  8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) .............................................. 16, 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................ 4, 16, 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................ 9

*Wolph v. Acer Am. Corp.*,
  No. C 09-01314 JSW, 2013 WL 5718440 (N.D. Cal. Oct. 21, 2013) ..................... 4

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778, JLS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............ 1, 17, 20

**Federal Docketed Cases**

*Birch v. Office Depot, Inc.*,
  No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007) .................................................. 20

*Rulli v. Nielsen Co. (U.S.) LLC.*,
  No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) ........................................ 10, 25

*Willner v. Manpower Inc.*,
  No. 11-cv-02846-JST (N.D. Cal. June 22, 2015) ..........................................*passim*

580670.19

**California Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
    85 Cal. App. 4th 1135 (2000) ...........................................................................12

*Bell v. Farmers Ins. Exch.*,
    115 Cal. App. 4th 715 (2004) ..........................................................................22

*In re Cellphone Fee Termination Cases*,
    186 Cal. App. 4th 1380 (2010) ...........................................................22, 23, 25

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (2008) ......................................................................18, 19

*Children's Hosp. and Med. Ctr. v. Bonta*,
    97 Cal. App. 4th 740 (2002) ..............................................................................9

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) ............................................................................8

*Earley v. Super. Ct. of L.A.*,
    79 Cal. App. 4th 1420 (2000) ..........................................................................21

*Glendora Cmty. Redev. Agency v. Demeter*,
    155 Cal. App. 3d 465 (1984) ...........................................................................16

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) .........................................................................5, 9, 15

*Lealao v. Beneficial Cal., Inc.*,
    82 Cal. App. 4th 19 (2000) ..........................................................................5, 19

*Munoz v. BCI Coca-Cola Bottling Co. of L.A.*,
    186 Cal. App. 4th 399 (2010) ..........................................................................22

*Peak-Las Positas Partners v. Bollag*,
    172 Cal. App. 4th 101 (2009) ............................................................................8

*PLCM Group, Inc. v. Drexler*,
    22 Cal. 4th 1084 (2000) ....................................................................................9

*Press v. Lucky Stores, Inc.*,
    34 Cal. 3d 311 (1983) ........................................................................................5

*Rider v. Cnty. of San Diego*,
    11 Cal. App. 4th 1410 ......................................................................................21

*San Bernardino Valley Audubon Soc'y v. Cnty. of San Bernardino*,
    155 Cal. App. 3d 738 (1985) .............................................................................6

*Sav-on Drug Stores, Inc. v. Super. Ct.*,
    34 Cal. 4th 319 (2004) ....................................................................................24

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) ...........................................................................18, 19, 21

580670.19

*Thayer v. Wells Fargo Bank, N.A.*,
　92 Cal. App. 4th 819 (2001) ....................................................................................6

*Vo v. Las Virgenes Mun. Water Dist.*,
　79 Cal. App. 4th 440 (2000) ....................................................................................5

*Wershba v. Apple Computer, Inc.*,
　91 Cal. App. 4th 224 (2001) .............................................................................8, 16

*Woodland Hills Residents Ass'n v. City Council*,
　23 Cal. 3d 917 (1979) ..............................................................................................6

**California Docketed Cases**

*Contreras v. Bank of Am., N.A.*,
　No. CGC-07-467749 (Super. Ct. S.F. Cnty. Sept. 3, 2010) ...................................16

*Mayton v. Konica Minolta Business Solutions, U.S.A., Inc.*,
　No. RG12657116 (Super. Ct. Alameda Cnty. June 22, 2015) ................................20

*Myart v. Autozone, Inc.*,
　Case No. 05CC03218 (Super. Ct. Orange Cnty. Nov. 2, 2011) ........................17, 20

**Federal Statutes**

Class Action Fairness Act ....................................................................................4

**California Statutes**

Cal. Civ. Code
　§ 1021.5 ..................................................................................................................21

Cal. Code Civ. Proc.
　§ 1021.5(a) ...............................................................................................................5

Cal. Lab. Code
　§ 1194(a) ............................................................................................................4, 21
　§ 1720 .......................................................................................................................3
　§ 1771 .......................................................................................................................3
　§ 2699(g)(1) ..............................................................................................................5
　§§ 17200 et seq. ........................................................................................................4

**Federal Rules**

Fed. R. Civ. P. 23(h)............................................................................................21

580670.19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As set forth in the terms of the Settlement, Class Representatives Darren Scott, Jon Hotzler, Gary Charles Backlund, and Jose D. Valdez seek an award to Class Counsel of $1,900,000 for attorneys' fees, up to $300,000 in costs actually and expected to be incurred in litigating this action, and $5,000 service awards to each of the four Class Representatives for their service as Class Representative and signing of a general release. Amended Settlement Agreement ¶¶ 40(a),(b),(f), ECF No. 270-1.

This attorneys' fees request is reasonable and should be approved because it well-justified under the lodestar approach. Here, the requested fee award is **$1,284,823.50 less than Class Counsel's current lodestar figure and it constitutes a negative multiplier or 0.60 of their lodestar to date**. This reduction of Class Counsel's lodestar is significant because the circumstances here would actually warrant a positive multiplier as: (1) the Settlement obtained both an excellent monetary result as well as substantial prospective relief in the form of current and future payment of prevailing wages for testing and inspection work; (2) Class Counsel provided high quality and skilled representation of the Class over the course of this four-year old case; (3) that skill was necessary to tackle novel and complex issues presented in this litigation, including the first court to find that testing and inspection work was covered by California prevailing wage laws to Class Counsel's knowledge, and the rigorous defense mounted by SimplexGrinnell; and (4) the risk of representing the Class on a wholly contingency basis. Unsurprisingly, courts faced with similar wage and hour settlements have awarded commensurate fee awards under the lodestar method. *See, e.g., Wren v. RGIS Inventory Specialists*, No. C-06-05778, JLS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011) (granting lodestar fee award of $11,307,449.62 where gross settlement fund totaled $27,000,000).

The Settlement also passes the common fund cross-check because it represents 38.7% of the gross Settlement amount of $4,900,000 and 22.6% of the constructive common fund of $8,400,000 (based on the monetization of five years of paid prevailing wages into the future). These percentages of either the gross Settlement amount or the constructive common fund are reasonable and should be approved because (1) they are a fair charge to the Class who benefited from their skilled representation

580670.19

1  and mirror the negotiated fees typical of the legal marketplace; (2) Class Counsel obtained an excellent

2  result, both in monetary and non-monetary terms; (3) significant risks faced Plaintiffs with continued

3  litigation; (4) Class Counsel were skillful and provided high quality representation of the Class;

4  (5) Class Counsel assumed significant contingent risk in representing the Class; (6) the Class has

5  responded positively to the Settlement and the requested fee award; and (7) it is consistent with awards

6  granted by other courts.

7  Likewise, Plaintiffs' request for reimbursement of actual and expected costs of up to $300,000

8  should be approved because Class Counsel have incurred approximately $241,195.67 in actual costs to

9  date, they anticipate additional costs to finalize this Settlement, and the Class has expressed its

10  approval of this award thus far in the Notice period.

11  Finally, service awards of $5,000 for each of the four Class Representative Plaintiffs are

12  appropriate because they assumed the considerable financial and reputational risk serving as class

13  representatives in this action, spent significant time and had an impactful effect assisting with the

14  prosecution of this case, and sacrificed their personal benefit to reach the laudable result for the Class.

15  Neither SimplexGrinnell nor the Class opposes or has objected to these service awards.  Critically, the

16  Class Representatives have agreed to a general release of their claims against SimplexGrinnell, beyond

17  the more narrow Class release.  These requested service awards also match the $5,000 service awards

18  that are considered presumptively reasonable by this Court and are routinely approved.

19  Based on the foregoing, Plaintiffs respectfully request that the Court grant in full their motion

20  and approve the requested attorneys' fees, costs, and service awards.

## II.      RELEVANT BACKGROUND[1]

### A.      The Court Certified the Class, Appointed Class Counsel, and Granted Preliminary Approval of the Settlement.

On April 22, 2015, the Court granted preliminary approval of the Settlement.  Order Granting

Motion for Preliminary Approval of Class Action Settlement ("Prelim. App. Order"), ECF No. 271.  In

---

[1] Plaintiffs previously provided a detailed description of this case's history in their motion for preliminary approval and incorporate by reference that information in the interest of economy.  *See* Prelim. App. Mot. 2-6, ECF No. 264.

580670.19

1   that Order, the Court certified a class comprised of all individuals employed by SimplexGrinnell LP at

2   any time since April 18, 2007 until October 28, 2014, who have performed testing or inspection of fire

3   alarm or sprinkler systems in California on "public works," as defined in California Labor Code

4   Sections 1720, 1771; granted approval of the proposed Notice (subject to several minor revisions) and

5   ordered the mailing of the Notice Packet to Class Members by the Claims Administrator; concluded

6   that the Ninth Circuit's factors supported the preliminary approval of the Settlement and that net

7   recovery to the Class was fair, reasonable and adequate in light of the strength of Plaintiffs' case, the

8   risks of further litigation, and the significant value of the prospective relief obtained; and set the Final

9   Approval Hearing to be heard on September 3, 2015. *Id.*

10   **B.**     <u>**The Distribution of Notice Has Resulted In a Positive Reaction By the Class.**</u>

11         On or about May 8, 2015, the Court-approved settlement administrator mailed out Notices to

12   approximately 533 Class Members. Declaration of Laura L. Ho ISO Plaintiffs' Motion for Attorneys'

13   Fees, Costs, and Service Awards ("Ho Fee Decl.") ¶ 5, filed herewith. The Notice informed the Class

14   about the Settlement terms, including (1) that Plaintiffs would seek up to $1,900,000 of the Settlement

15   Fund for attorneys' fees and no more than $300,000 in costs; and (2) that Plaintiffs would request a

16   service award of $5,000 for the four Class Representatives in recognition of their critical role in

17   bringing this lawsuit and in exchange for their broader release of claims. *Id.*[2]

18         Forty-five days after this initial mailing, no Class Member has requested exclusion from or

19   objected to the Settlement or Plaintiffs' requested attorneys' fees, costs, or service awards. *Id.* ¶ 6. In

20   fact, Class Representative Backlund, currently employed as a Senior Inspector, has spoken with

21   numerous SimplexGrinnell workers who have expressed their gratitude for the Settlement's change in

22   SimplexGrinnell's policy to start paying prevailing wages. Declaration of Gary Charles Backlund ISO

23

24

25

26

27

28

---

[2] Notably, the Parties revised the Class Notice to conform with the Court's Preliminary Approval Order by (1) indicating that the settlement administration costs are estimated not to exceed $16,550; (2) indicating that a total payment of no more than $20,000 will be made to the three non-Class Representatives in exchange for their individual claims; (3) including a clear statement of the binding effect of the class judgment on all participating Class Members; and (4) revising the requirements for submitting a valid request for exclusion to eliminate the need to provide the Class Member's telephone number and mailing address. Ho Fee Decl. ¶ 4.

580670.19

1 | Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award ("Backlund Decl.") ¶ 11, filed
2 | herewith.

### III.     ARGUMENT

**A.     California Law Governs the Award of Attorneys' Fees, Costs, and Service Awards.**

In the Ninth Circuit, it is well established that the law governing the settled claims shall also govern the award of fees, costs, and service awards.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees.").  Accordingly, courts in the Northern District have consistently applied California law to determine the appropriate award of attorneys' fees where it also governed the settled claims.  *See, e.g. Willner v. Manpower Inc.*, No. 11-cv-02846-JST, at 9-10 (N.D. Cal. June 22, 2015) (this Court affirming that California and not Ninth Circuit law applied to determine the appropriate fee award in a wage and hour settlement brought under the California Labor Code; noting that the Ninth's circuit's 25% benchmark "does not apply here");[3] *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 WL 5718440, at *2 (N.D. Cal. Oct. 21, 2013) ("This action asserted claims under California law and is premised on diversity jurisdiction. Therefore, California law governs the determination of attorneys' fees here.").

Here, California authority will determine the attorneys' fees awarded to Class Counsel because it also governs Plaintiffs' settled prevailing wage and waiting time penalty claims, all of which were brought under California Labor Code and the Unfair Competition Laws.  The application of California law is further confirmed by the fact that this Court's jurisdiction over this complaint arose under the Class Action Fairness Act and federal diversity jurisdiction – as opposed to federal question jurisdiction.  ECF No. 1.

**B.     Class Counsel Are Entitled to Reasonable Attorneys' Fees Under California Fee-Shifting Statutes.**

As the prevailing parties in the settlement of this wage and hour class action, Plaintiffs are entitled to recover their reasonable attorneys' fees, costs and expenses.  *See* Cal. Lab. Code §§ 1194(a),

---

[3] All docketed cases cited herein shall be provided in an Appendix, filed herewith.

580670.19

2699(g)(1); Cal. Code Civ. Proc. § 1021.5(a).  A plaintiff is a prevailing party where he obtains a successful settlement.  *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff.").  Thus, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs in light of the successful settlement they obtained.

**C.     The Court Should Apply the Lodestar Methodology to Award Attorneys' Fees Under the Settlement.**

Under California law, "the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method."  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).  California courts have long recognized that the lodestar approach is the touchstone for fee requests because it is "fundamental to arriving at an objectively reasonable amount" for attorneys' fees.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001).  Similarly, the Ninth Circuit has also recognized the appropriateness of applying the lodestar method for class actions brought under fee-shifting statutes, particularly where injunctive relief is obtained that cannot be easily monetized.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence'").

The lodestar approach involves a two-step process.  In the first step, the "lodestar" figure is calculated by multiplying "the number of hours [the prevailing party] reasonably expended on the litigation [ ] by a reasonable hourly rate."  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 (1983).  "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."  *Lealao*, 82 Cal. App. 4th at 26.

It is well-settled that "[u]nder the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust."  *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000) (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 632-33 (1982) (*Serrano IV*)).  Awarding fees in this way is achieves the ultimate goal of a

statutory fee award, which is "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees...to those who successfully bring such suits." *Woodland Hills Residents Ass'n v. City Council,* 23 Cal. 3d 917, 933 (1979) (emphasis added). To accomplish that purpose, the fee award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Soc'y v. Cnty. of San Bernardino,* 155 Cal. App. 3d 738, 755 (1985). "Adequate fee awards are perhaps the most effective means of achieving [the] salutory goal [of encouraging "private attorney general" actions and] [c]ourts should not be indifferent to the realities of the legal marketplace or unduly parsimonious in the calculation of such fees." *Thayer v. Wells Fargo Bank*, *N.A.*, 92 Cal. App. 4th 819, 839 (2001).

Here, the lodestar approach is the appropriate method for calculating a reasonable attorneys' fees award because Plaintiffs have pursued claims under fee-shifting statutes, such an award would more closely approximate the fee Class Counsel would have received if they represented billed clients, it applies an objective formula that courts have long recognized is presumptively reasonable, it results in an award that effectively encourages skilled counsel to undertake difficult public interest cases, and the presence of a sizeable injunctive relief component makes monetizing the Settlement benefits for the Class difficult.[4]

**D.     The Lodestar Methodology Confirms the Reasonableness of the Requested Fee Award.**

Class Counsel's combined lodestar to date, which totals $3,184,823.50, exceeds the requested fee award by almost $1,284,823.50.  Thus, the requested fee award of $1,900,000 is reasonable because it represents a significant negative multiplier of Class Counsel's lodestar to date.

**1.     Class Counsel Have Expended a Reasonable Number of Hours Litigating This Action.**

Class Counsel, together, have reasonably expended approximately 6,845.99 hours to bring this Settlement to conclusion.

---

[4] While courts also have the discretion to award attorneys' fees pursuant to the common fund approach if the settlement produced a common fund that benefits the entire class, the circumstances here favor the application of the lodestar method because it achieves a more reasonable result.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942-43 (noting that the courts' discretion to choose the appropriate fee calculation method must be guided by achieving a reasonable result).

1    As set forth in greater detail in Plaintiffs' motion for preliminary approval, this four-year old

2    case was hard fought and required Class Counsel to invest significant resources, both in time and costs,

3    to successfully prosecute.  Prelim. App. Mot. 2-6.  This case required Class Counsel, among other

4    things, to amend the complaint four times, oppose several motions to dismiss or for judgment on the

5    pleadings, oppose a motion to strike Plaintiffs' claim for liquidated damages, exchange numerous

6    requests for written discovery and attendant motions to compel further responses, gather and analyze

7    hundreds of thousands electronic and paper documents, serve an initial and multiple revised expert

8    damages reports, depose or defend the depositions of over twenty witnesses (such as numerous

9    company witnesses, damages experts for both sides, and each of the Class Representatives), and

10   prevailing on Plaintiffs' motion for summary adjudication that testing and inspection work is covered

11   by the California prevailing wage laws.  *Id.*  Even settlement did not come easy.  Class Counsel had to

12   fully brief Plaintiffs' motion for class certification and their oppositions to SimplexGrinnell's motion

13   for summary adjudication and to exclude their damages expert's testimony prior to attending a full-day

14   mediation session in late October of last year.  *Id.* at 5.  Once a settlement agreement in principle was

15   reached, it took the Parties another two months to complete the long form agreement submitted for

16   approval.  *Id.* at 6.[5]

17       All of this case-related work required Class Counsel to actually expend 6,845.99 hours to date.

18   Ho Fee Decl. ¶¶ 11-12; Declaration of Raymond C. Fay ("Fay Fee Decl.) ¶ 14, filed herewith;

19   Declaration of Bruce Menken ("Menken Fee Decl.") ¶ 15, filed herewith; Declaration of Jason Rozger

20   ("Rozger Fee Decl.") ¶ 7 filed herewith.  These reasonableness incurred hours are supported by

21   detailed and contemporaneously billing records maintained by Class Counsel.  Summaries of these

22   billing records are either attached to or described in Class Counsel's declarations for the Court's

23

24

25

---

26   [5] The duration of this case also spanned several substitutions of Class Counsel.  Initially filed by the
     firms Mehri & Skalet PLLC, Lewis Feinberg Lee & Jackson P.C., and Beranbaum Menken LLP,

27   Goldstein Borgen Dardarian & Ho ("GBDH") substituted in for Lewis Feinberg in approximately
     March 2013.  In or around November 2013, the Fay Law Group replaced Mehri Skalet in representing

28   Plaintiffs and the Class.  Currently, Class Counsel is comprised for the Fay Law Group, Beranbaum
     Menken, and GBDH.  Fay Fee Decl. ¶¶ 2, 14.

review.[6]  Ho Fee Decl. ¶ 11, Ex. 1; Fay Fee Decl. ¶ 14, Ex. 1; Menken Fee Decl. ¶ 15, Ex. A; Rozger Fee Decl. ¶ 7.

Class Counsel staffed and managed the case so as to avoid duplication of efforts and to efficiently manage, staff, assign, and divide the work between the three co-counsel firms and amongst lower and higher-level attorneys.  Ho Fee Decl. ¶¶ 11(c)-(d); Fay Fee Decl. ¶ 13; Menken Fee Decl. ¶ 17.  The hours Class Counsel expended to investigate, litigate, attempt to resolve and try this case are entirely reasonable and should be compensated in full in light of the complexity and novelty of the issues, Simplex's tenacious defense, the four-year duration of the case, the fact that Class Counsel obtained a favorable summary judgment ruling on the key liability issue, and the exceptional Settlement results obtained – both monetary and non-monetary.  Ho Fee Decl. ¶¶ 7-8, 11(a); Fay Fee Decl. ¶ 13; Menken Fee Decl. ¶ 18; Rozger Fee Decl. ¶ 7.

It is well settled that trial courts generally should defer to the winning lawyer's professional judgment concerning the number of hours reasonably required to win the case.  *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).  Moreover, a reasonable fee award must take into account whether the defendant mounted an aggressive defense.  *See, e.g., Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'") (quoting *Int'l Longshoremen's & Warehouse Union v. L.A. Exp. Terminal, Inc.*, 69 Cal. App. 4th 287, 304 (1999); *Willner*, No. 11-cv-02846-JST, at 11 (N.D. Cal. June 22, 2015) (approving fee award where the case had "been fiercely litigated; the parties have engaged in substantial motion practice, including briefing multiple motions to dismiss or strike, a motion to transfer venue, cross-motions for summary judgment, and a class certification motion.").  Here, Class Counsel's experienced and professional

---

[6] If the Court desires detailed time records, Class Counsel will produce them *in camera*.  However, detailed time records are not required for lodestar calculations.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("California case law permits fee awards in the absence of detailed time sheets").  Declarations by counsel as to time spent, even if only estimates, are enough.  *Id.* at 254-55 ("Here plaintiff's attorneys submitted declarations evidencing the reasonable hourly rate for their services and establishing the number of hours spent working on the case."); *see also, Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996) (stating that lodestar calculation could be based on counsel's estimate of time spent).  "An experienced trial judge is in a position to assess the value of the professional services rendered in his or her court." *Wershba*, 91 Cal. App. 4th at 255.

580670.19

1  opinion are that the hours expended in prosecuting this action are reasonably incurred and were

2  necessary in the face of SimplexGrinnell's aggressive litigation defense strategy.[7]

3         Class Counsel also will spend additional time monitoring the remaining Notice period,

4  obtaining final approval, attending the final approval hearing, implementing the settlement, and

5  reporting the results to the Court, which will be done functionally without compensation.  Ho Fee

6  Decl. ¶ 13; Fay Fee Decl. ¶ 13; Menken Fee Decl. ¶ 19.

7         **2.    Class Counsel's Hourly Rates Are Reasonable and Commensurate With the Rates**

8         **of Similarly Experienced Practitioners.**

9         Courts routinely approve requested hourly rates of Class Counsel as reasonable if they are

10  within the range of hourly rates charged by attorneys of comparable experience, reputation, and

11  ability for similar litigation.  *Ketchum*, 24 Cal. 4th at 1133; *PLCM Group, Inc. v. Drexler*, 22 Cal.

12  4th 1084, 1095 (2000) ("The reasonable rate is that prevailing in the community for similar work.").

13  The use of current hourly rates is also appropriate given the deferred nature of counsel's

14  compensation.  *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) "[C]urrent

15  rates, rather than historical rates, should be applied in order to compensate for the delay in payment .

16  . ." citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Wash. Pub. Power Supply Sys.*

17  *Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate

18  delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed

19  during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime

20  rate enhancement.").

21         Under applicable California and Ninth Circuit precedents, the sworn declarations of

22  knowledgeable counsel who practice in the relevant market constitute probative evidence supporting

23  the hourly rates of a fee applicant.  Similarly, the fact that a court has previously upheld the hourly

24  rates of counsel establishes a presumption that those rates are reasonable, and that they fall within the

25  market range.  *See, e.g.*, *Children's Hosp. and Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002)

26  (affirming rates that were "within the range of reasonable rates charged by and judicially awarded

27

28  _____

[7] While Class Counsel exercised contemporaneous billing judgment throughout the litigation, an extra 10% reduction across the board for any duplication of efforts would still result in a reasonable award.

9

580670.19

comparable attorneys for comparable work"); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

Class Counsel's applied hourly rates are commensurate with the rates of practitioners with similar experience within the California legal market.  Ho Fee Decl. ¶¶ 14-15; Fay Fee Decl. ¶ 11; Menken Fee Decl. ¶ 20.  In fact, Class Counsel's hourly rates, as recently as 2015, have been previously approved and found reasonable by other federal and state courts, including the Northern District court.  Ho Fee Decl. ¶¶ 14(a); Menken Fee Decl. ¶ 7; *see also Rulli v. Nielsen Co. (U.S.) LLC.*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (approving GBDH's 2015 hourly rates as reasonable for the Bay Area legal market).  That Class Counsel's combined blended hourly rate is $465.18, which is consistent with the rate of an associate, further confirms the reasonableness of their applied rates. Ho Fee Decl. ¶ 15.

### 3.  Class Counsel's Combined Lodestar Is Reasonable Because It Is Significantly Less Than the Requested Fee Award.

Class Counsel's lodestar as of June 22, 2015 totals $3,184,823.50.  Ho Fee Decl. ¶ 16.  This lodestar figure represents approximately 6,845.99 hours of attorney and paralegal time multiplied by Class Counsel's reasonable hourly rates.  *Id*. ¶¶ 12, 15, 16.  Critically, the requested fee award of $1,900,000 is <u>$1,284,823.50 less</u> than Class Counsel's current lodestar and represents a <u>negative multiplier</u> or 0.60 of their lodestar to date.  *Id*. ¶ 17.  This negative multiplier alone is sufficient to justify Class Counsel's requested fee award.[8]

### 4.  The Factors Supporting a Positive Multiplier Are Present Here Despite the Fact that Class Counsel Seek an Award Constitutes a Negative Multiplier.

Under the second step of the lodestar analysis, all of the "multiplier" factors (the results obtained, the quality of the representation, the novelty and complexity of the issues, and the contingent

---

[8] The distribution of fees amongst Class Counsel is also reasonable because it predominately based on respective lodestars and results in the following shares: 33% Beranbaum Menken, 32 % Mehri & Skalet, 23% GBDH, 6% Fay Law Group, and 6% Lewis Feinberg Lee & Jackson.  Ho Fee Decl. ¶ 19.

1  risk presented) support the award of Class Counsel's current lodestar subject to a positive multiplier.

2  While a positive multiplier would have been warranted here, Class Counsel ask for an award that

3  represents a negative multiplier or 0.60 times their current lodestar.  These "multiplier" factors further

4  confirm the reasonableness of the requested fee.

           **a.**    <u>**The Settlement Is an Excellent Result For the Class, Which Is Confirmed**</u>
                <u>**By the Lack of Objections to Date.**</u>

7         Plaintiffs, through Class Counsel, have achieved a high level of success both in monetary and

8  non-monetary results on behalf of the Settlement Class, which justifies the requested fee award.

9         First, Plaintiffs have achieved valuable and lasting benefit to the Class by way of the

10  SimplexGrinnell's agreement to pay prevailing wages for all testing and inspection work completed on

11  fire alarm or sprinkler systems at public work job sites starting January 2, 2015 and into the future.

12  This company policy change is significant because it ensures that workers are paid the proper

13  prevailing wages effective beginning this year.  As a result, current employees of SimplexGrinnell

14  have been receiving full prevailing wages due for testing and inspection work on public job sites since

15  the entry of the Court's preliminary approval order and will receive a back payment for all prevailing

16  wages due between January 2, 2015 and its recent policy change shortly after Settlement payments are

17  made.  Ho Fee Decl. ¶ 21.  Further still, all future employees will receive the proper prevailing wages

18  for their testing and inspection work on public sites on a going forward basis, which will affect

19  hundreds, if not thousands, of future employees.  Rather than having to wait years for a result after a

20  trial and related appeals, this Settlement implements immediate and meaningful changes to

21  SimplexGrinnell's pay practices and pays additional compensation to SimplexGrinnell workers now

22  and into the future.  *Id*.

23         Though it is difficult to determine the monetary benefit conferred by this prospective relief with

24  exactitude, $3.5 million is a fair estimate of this policy changes value over the next five years.  *Id*.

25  ¶ 22.[9]  The resulting constructive monetary value of this Settlement totals roughly $8.4 million dollars.

---

[9] This estimate was calculated by determining the pro-rata yearly value of the Settlement (roughly
$700,000 per year of the Class period) and multiplying it by five years, which was the same calculation
used to estimate Plaintiffs' likely recovery at trial.  The resulting total is $3.5 million.  This estimate
does not account for the likely increase in Class Members over time and thus, is a likely conservative
calculation.  Ho Fee Decl. ¶¶ 22-23.

580670.19

This constructive fund represents a significant recovery for the Settlement Class.  This Court and others have consistently recognized the need to consider the monetized value of prospective relief obtained by class action settlements.  *See, e.g., Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) later vacated as moot by settlement (affirming the need to consider the monetary value of the injunctive relief to create a constructive fund); *Willner*, No. 11-cv-02846-JST, at 11, at 12 (N.D. Cal. June 22, 2015) (considering the reasonable monetary value of significant prospective relief in addition to the monetary relief of the settlement to assess the reasonableness of fee award).

Second, the Settlement's monetary terms also support the requested fee award.  For a Class of approximately 533 employees, Plaintiffs have recovered $4.9 million in unpaid prevailing wages and related penalties.  After deductions are made to reach the Net Settlement fund, Class Members will receive an average award of $4,920.26.  In the experienced view of Class Counsel, these awards amount to a substantial recovery for the Settlement Class.  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 22, 2008) ("significant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").[10]

Finally, the Class' positive reaction, to date, affirms the positive value of this Settlement.  Notice was mailed to the Class 45 days ago and, so far, no Class Member has submitted an objection or requested exclusion from the Settlement.  Ho Fee Decl. ¶ 25.  Moreover, Class Representatives have also received positive feedback about the terms of this Settlement.  Backlund Decl. ¶ 11; Declaration of Jose Valdez ISO Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award ("Valdez Decl.") ¶ 11, filed herewith.  It is well settled that positive reactions by class members favors settlement approval.  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000).  Thus, the absence of disapproval constitutes strong evidence in support of the reasonableness of the requested fee and cost award.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The absence of objections or disapproval by class

---

[10] This degree of recovery is particularly appropriate where the prevailing wage damages only constitute the difference between the contract wages already paid by SimplexGrinnell and the applicable prevailing wage rate.  Ho Fee Decl. ¶ 24.

1  members to Class Counsel's fee request further supports finding the fee request reasonable.").  This

2  positive Class response constitutes additional evidence that the monetary and non-monetary terms of

3  the Settlement represent an excellent result for the Class.

4        **b.**    <u>**Class Counsel Provided High Quality Representation of the Class.**</u>

5        This factor supports the reasonableness of the requested fee award because Class Counsel

6  provided the Class with highly skilled and high quality legal representation.  Throughout this four-year

7  old case, Class Counsel have fought hard to prosecute the Class' claims, often to positive results.  *See*

8  *Willner*, No. 11-cv-02846-JST, at 5 (N.D. Cal. June 22, 2015) (finding settlement "favored where

9  plaintiffs must overcome significant barriers to make their case.").

10        Critically, Class Counsel succeeded in obtaining a favorable summary adjudication ruling on

11  the key liability issue of the case.  In its March 2014, the Court agreed with Plaintiffs that prevailing

12  wages had to be paid for this testing and inspection work and found that SimplexGrinnell's uniform

13  policy of refusing to pay prevailing wages for testing and inspection work throughout California

14  violated the Labor Code.  ECF No. 199 at 4-10.  While this decision was rooted in well-established

15  precedent regarding the prevailing wage laws' coverage of maintenance work completed on public

16  work sites, this ruling was the first, to Class Counsel's knowledge, that explicitly held that testing or

17  inspection work on fire alarm and sprinkler systems on public work sites required the payment of

18  prevailing wages under California law.  Prelim. App. Mot. 4.

19        Class Counsel also successfully withstood repeated motions to dismiss and for judgment on the

20  pleadings while also advancing the interests of the Class by amending the complaint to add

21  representative PAGA claims as well as additional named Plaintiffs, the most recent of whom provided

22  the Class with standing to pursue declaratory and injunctive relief.  *Id*. 2-3.  These successes allowed

23  Plaintiffs not only to continue the prosecution of their claims on the merits, but also to pursue

24  additional and substantial remedies that proved integral to reaching this Settlement.   This case also

25  required significant motion practice by Class Counsel regarding discovery issues that were granted in

26  whole or in part, including, among others, a motion for protective order to stay discovery, a motion to

27  compel production of complete class data and electronically stored data, and a motion to compel

28  further responses to written interrogatories.  *Id*. 5.

1    In addition, Class Counsel spent countless hours developing, constructing, and defending a

2  complicated damages model for calculating unpaid prevailing wages owed to the Class in conjunction

3  with Plaintiffs' damages expert.  Due to SimplexGrinnell's failure to pay prevailing wages to workers

4  who did testing and inspection work, Plaintiffs and Class Counsel had to formulate a damages model

5  integrating data from at least three disparate SimplexGrinnell databases (such as the ACE database of

6  project data, the Time Entry database of payroll data, and the PeopleSoft data of job history data),

7  other SimplexGrinnell datasets (such as the paper Time Sheets, which were maintained in physical

8  form at each regional office throughout California and required manual scanning, coding, and then

9  review), as well as numerous sources of other data (such as the published prevailing wage rate

10  schedules for each county in California, which changed roughly every six months for the then 6-year

11  liability period).  *Id*. 4-5; Ho Fee Decl. ¶ 28.

12    After creating this complex model to calculate the Class' damages, Class Counsel then faced

13  repeated attacks and challenges by SimplexGrinnell regarding the accuracy of these calculations, the

14  methodology employed, and the admissibility of several of revisions to the model.  SimplexGrinnell's

15  granular scrutiny of Plaintiffs' expert's methodology and even program coding required Class Counsel

16  to vigorously defend the proffered damages model.  Ho Fee Decl. ¶ 29.  These attacks raised serious

17  risks to Plaintiffs' ability to prevail on its pending class certification motion or to ultimately prove

18  class damages using a common form of proof.  *Id*.

19    Despite all of these challenges and SimplexGrinnell's relentless defenses, Plaintiffs were well-

20  positioned to reach a favorable final settlement on behalf of the Class, which itself required significant

21  expertise and negotiations, a full-day mediation session with an experienced mediator, and numerous

22  substantive settlement discussions to achieve.  Ho Fee Decl. ¶ 30; Mot. Prelim. App. 6.  This

23  Settlement also achieved both monetary and non-monetary relief for the Class – a further testament to

24  the skillful work performed by Class Counsel.

25

26

27

28

580670.19

      **c.**      **<u>This Action Presented Novel and Complex the Issues That Required Skilled Counsel.</u>**

As discussed above, this case required Class Counsel to address and tackle numerous novel and complex issues. *See supra* Section III(D)(4)(b).  This factor supports the reasonableness of the requested fee award.

      **d.**      **<u>The Contingent Risk Assumed by Class Counsel Was Significant.</u>**

A law firm that prosecutes class action cases does not get paid in every case.  Sometimes, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked.  Where a plaintiff's firm does succeed, therefore, it is appropriate to compensate the firm for the risks the firm regularly undertakes.  As the California Supreme Court has explained:

> [A] contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.  The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33 (internal citation and quotation omitted).  Accordingly, courts, including this one, have recognized that "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (internal citation omitted); *Willner*, No. 11-cv-02846-JST, at 11 (N.D. Cal. June 22, 2015) (recognizing that an "attorneys' fee award should take into account the risk of representing this class action Plaintiff on a contingency basis over a period of four years.").

In the present case, Class Counsel have diligently prosecuted this case since early 2011, and in effect has loaned their legal services to the Class since that time.  Class Counsel have prosecuted this case wholly on a contingency basis, and done so at great risk of never receiving any compensation due to the risky nature of class action litigation in general, and due to the developing law with respect to prevailing wages owed for testing and inspection work.  Ho Fee Decl. ¶ 31; Fay Fee Decl. ¶ 7.  In

addition to the contingent risk of this case, Class Counsel's representation of Plaintiffs and the Class in this action forced them to forego other cases, including hourly paid matters.  Ho Fee Decl. ¶ 31; Fay Fee Decl. ¶ 7; Menken Fee Decl. ¶ 18.

### 5.   Class Counsel's Requested Fee Award Is Reasonable Because It Represents a Negative Multiplier Despite Deserving a Positive Multiplier.

In wage and hour actions, California and Ninth Circuit courts both approve reasonable multipliers on the class counsel's lodestar, which range from 2 to 4 times, to reward counsel for accepting the contingent risk of the litigation or obtaining excellent results.  *See, e.g., Wershba*, 91 Cal. App. 4th at 255 (noting that multipliers can range from 2 to 4 or higher); *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479-81 (1984) (affirming multiplier of 12); *Contreras v. Bank of Am., N.A.*, No. CGC-07-467749 (Super. Ct. S.F. Cnty. Sept. 3, 2010) (approving fee award that was 2.73 multiplier of lodestar); *see also Vizcaino*, 290 F.3d at 1051 & n.6 (affirming lodestar multiplier of 3.65 in light of complexity and risk of case and surveying 34 class common fund settlements to find that 83% of multipliers were in the 1 to 4 range); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees that were 2.52 multiplier of lodestar); *Boyd v. Bank of Am.*, No. SACV-0561-DOC, 2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (awarding fees that were 2.58 multiplier of lodestar).  *Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *7 (N.D. Cal. Apr. 21, 2011) (awarding fees that were 1.94 multiplier of lodestar); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (approving fee award that represented a multiplier of 2.76 as falling within the "majority" range for risk multipliers).

Here, the requested $1,900,000 fee is **$1,284,823.50 less than** Class Counsel's lodestar to date. While the excellent results obtained for the Class, the assumption of contingent risk by Class Counsel, the complexity and novelty of issues, and high quality of representation provided by Class Counsel would ordinarily warrant a 2 to 3 times multiplier of their lodestar, the requested fee award represents a **negative** multiplier or 0.60 times their current lodestar.   The reasonableness of the requested fees is further bolstered by the fact that Class Counsel's lodestar will continue to increase due to the

16

580670.19

additional work required to bring this Settlement to conclusion, for which they will functionally not receive any additional compensation.

### 6. The Requested Fee Award Is Supported by Lodestar Awards Granted in Other Similar Cases.

The Court should also award the requested fee award because it is consistent with lodestar awards granted in other similar wage and hour settlements. *See, e.g., Wren*, 2011 WL 1230826, at *31 (granting lodestar fee award of $11,307,449.62 where gross settlement fund totaled $27,000,000); *Myart v. Autozone, Inc.*, No. 05CC03218 (Super. Ct. Orange Cnty. Nov. 2, 2011) (awarding $4,047,984 in fees where the class shared a $4,500,000 Settlement fund).

In *Wren*, Judge Spero applied the lodestar method because it allowed the court to more accurately assess the reasonableness of the fee request where the parties intensely litigate the action over four years, class counsel marshalled a tremendous amount of evidence, and the individual damages were relatively small, which in turn made a common fund analysis unlikely to lead to a reasonable fee. 2011 WL 1230826, at *17. After approving counsel's hourly rates and determining the reasonable amount of time billed (exercising billing judgment by eliminating 13.4% of their billed time), the *Wren* court award class counsel there their full lodestar. *Id*. at *27; *see also Myart*, No. 05CC03218 (Super. Ct. Los Angeles Cnty. Nov. 2, 2011) (granting fee award that resulted in a .76 negative multiplier of counsel's lodestar).

Just as in *Wren* and *Myart*, Class Counsel's fee request constitutes a reasonable award because (1) this action is also a four-year case that was intensely litigated and required Class Counsel to collect and review a substantial amount of evidence; and (2) the requested award is significantly less than Class Counsel's lodestar, which is based on reasonable hourly rates and a reasonable number of hours worked (reduced by the negative multiplier and thus effectively applying additional billing judgment). That lodestar fee awards were granted in these similar wage and hour settlements further confirms the reasonableness of Plaintiffs' requested award.[11]

---

[11] Because the requested fee award is fully justified by Class Counsel's negative multiplier to date as well as for the factors outlined above, this request is readily distinguishable from the concerns of collusive settlements raised by the Ninth Circuit in *Allen v. Bedolla*. *Allen v. Bedolla*, Nos. 13–55106, 13–56685, 2015 WL 3461537, at *5 (9th Cir. June 2, 2015) (reversing fee award where counsel received fees that were three times the class' monetary relief, unclaimed funds reverted to the

17

**E.** **The Reasonableness of the Fee Award Is Confirmed By a Cross-check With the Common Fund Methodology.**

Though not required, courts can confirm the reasonableness of a lodestar fee award in class settlements by comparing it against an award under the common fund approach where a common settlement fund benefits the entire class. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. The common fund approach is predicated on the principle that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). However, the award of attorneys' fees from a common fund is only appropriate where the fund is "a certain or easily calculable sum of money[.]" *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) ("*Serrano III*").

Here, the common fund methodology confirms the reasonableness of the requested fee award of $1,900,000 because it represents 38.7% of the gross Settlement Amount of $4,900,000 and 22.6% of the constructive common fund when taking into account the monetary benefit of SimplexGrinnell paying prevailing wages five years into the future. Consideration of the constructive common fund is appropriate here because courts recognize that an appropriate fee award must take into account both the benefit conferred by the monetary as well as non-monetary relief obtained. *See, e.g., Laguna*, 753 F.3d at 922-23 (approving requested fee award as a reasonable percentage of the constructive common fund that included the monetary value of the settlement's injunctive relief). As explained above, Class Counsel estimates that the constructive common fund, taking into account five years of prospective relief beginning in January 2015, totals approximately $8,400,000. This constructive fund reduces the requested fee award percentage of the fund to 22.6%. Notably, this percentage allocation for attorneys' fees is well below the one-third percentage routinely awarded by California courts. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008), *quoting Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether

---

defendant, and the settlement included a clear sailing arrangement on the fees). In addition, this case is factually distinguishable from *Allen* because this Settlement does not include a claims-made process, it is a non-reversionary fund, and the requested fee is a fraction of the monetary relief afforded to the Class.

1   the percentage method or the lodestar method is used, fee awards in class actions average around one-

2   third of the recovery."); *see also Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367,

3   at *6 (N.D. Cal. Feb. 2, 2009) ("fee awards in class actions average around one-third of the recovery").

4          These percentages of the gross Settlement fund as well as the constructive common fund

5   constitute a fair charge to the Class because equity requires that all participating Class Members

6   contribute a *pro-rata* share to the attorneys' fees that netted them a $4,900,000 non-reversionary

7   Settlement Fund combined with prospective relief that is already paying workers prevailing wages for

8   testing and inspection work.  Moreover, these percentages are within the range of fee arrangements

9   negotiated with and accepted by plaintiffs in order to attract competent counsel in the marketplace for

10  representation in wage and hour class actions of this nature.  *Chavez*, 162 Cal. App. 4th at 65

11  (recognizing that that typical contingency fee arrangements in the marketplace typically range from 20

12  to 40 percent of the recovery).

13         In addition, the requested fee award represents percentages of the common fund and

14  constructive fund that courts consider reasonable based on several factors, including (1) the results

15  obtained and whether non-monetary relief is obtained; (2) the riskiness of prosecuting the litigation; (3)

16  the skill and high quality of work by counsel; and (4) the financial burden carried by counsel to

17  prosecute the case on a contingency basis.  *Serrano III*, 20 Cal. 3d at 49; *Lealao*, 82 Cal. App. 4th at

18  26; *see also Vizcaino*, 290 F.3d at 1048-50 (internal quotation and citation omitted).

19         All of these factors, which support the award under the lodestar analysis, also support the

20  award under the common fund analysis.[12]  As discussed above, (1) Class Counsel achieved excellent

21  results for the Class, including significant monetary relief as well as valuable prospective relief in the

22  form of future prevailing wages paid, *supra* Section III(D)(4)(a); (2) the risks of continued litigation

23  were significant and SimplexGrinnell was expected to continue its aggressive litigation strategy, *supra*

24  Section III(D)(4)(b); (3) this Settlement was reached due to the skillful representation of well-qualified

25

26  _____

27  [12] These factors are also the same ones considered by the Ninth Circuit when determine whether to
    depart upward from its 25% benchmark for common fund settlements.  *See Six Mexican Workers v.*
    *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Thus, while the Ninth Circuit's 25%

28  benchmark is not controlling here, this overlapping analysis ultimately results in approval of the
    requested fee award under either California or federal law.

1    Class Counsel, *supra* Section III(D)(4)(b); and (4) Class Counsel had to bear the considerable risk of

2    representing the Class on a contingency basis, *supra* Section III(D)(4)(d).

3         Furthermore, the status of this case a non-mega fund settlement, *i.e.* less than $10 million

4    dollars, makes awarding a higher percentage fee award all the more appropriate since the smaller total

5    fund at issue does not implicate oversized awards that could arise from mega fund settlements.  *See*

6    *Vandervort*, 8 F. Supp. 3d at 1209-10 (in settlement resulting in common fund with ceiling of $3.3

7    million, awarding one-third of maximum settlement amount as attorneys' fees and costs); *Cicero v.*

8    *DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (noting that

9    fees of one-third are common in wage and hour settlements below $10 million, citing cases).

10        Finally, federal and state courts in California have also awarded as much as 40% of the

11   common fund in similar small wage and hour settlements where the award was supported by a lodestar

12   calculation.  *See, e.g.*, *Wren*, 2011 WL 1230826, at *29 (approving fee award that constituted 42% of

13   the common fund in wage and hour class and collective action); *Mayton v. Konica Minolta Business*

14   *Solutions, U.S.A., Inc.*, No. RG12657116 (Super. Ct. Alameda Cnty. June 22, 2015) (awarding 40% of

15   common fund in wage and hour settlement); *Birch v. Office Depot, Inc.*, No. 06cv1690 DMS, at ¶ 13

16   (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 wage and hour class action

17   settlement); *Myart*, No. 05CC3218 (awarding $4,047,984 in fees where the class shared a $4,500,000

18   Settlement fund despite the fact it represented over 47% of the combined funds).

19        Plaintiffs' requested fee award aligns with the award in *Wren* and also passes the common fund

20   cross-check because, just as there, all of the factors that support a larger percentage of the fund are

21   present while Class Counsel seek a smaller percentage of the gross fund (38.7% versus 42%) than

22   granted by the *Wren* court.  When the constructive fund is considered and the fee award drops to 22%

23   of the fund, the requested fees constitute a percentage of the fund that courts routinely find to be

24   reasonable.

25        Based on the foregoing, the Court should grant approval of the requested fee award because it

26   is justified under the lodestar method (resulting in a significant negative multiplier) and confirmed by

27   the common fund cross-check.

28

580670.19

**F.      Class Counsel's Out-of-Pocket Expenses are Reasonable and Compensable.**

Class Counsel request reimbursement for the out-of-pocket expenses they incurred during this litigation in the amount of no more than $300,000.  Ho Fee Decl. ¶ 36.  Class Counsel calculates their current costs figure to be $241,195.67.  Ho Fee Decl. ¶ 38.  Any unclaimed costs will be reallocated to the Class fund and distributed to the Class.

Litigation costs are recoverable under the fee-shifting statutes invoked by the claims alleged by Plaintiffs.  *See, e.g.*, Cal. Lab. Code §§ 1194(a), 2699(g)(1); Cal. Civ. Code § 1021.5.  It is well established that these types of costs are recoverable in class settlements.  *Serrano III*, 20 Cal. 3d at 35 (common fund doctrine permits class counsel to recover attorneys' fees *and* costs from the fund as a whole); *Rider v. Cnty. of San Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (costs are recoverable from the common fund "[o]f necessity, and for precisely the same reasons discussed above with respect to the recovery of attorney fees"); *Earley v. Super. Ct. of L.A.*, 79 Cal. App. 4th 1420, 1436 (2000); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Here, Class Counsel seek reimbursement for expenses up to $300,000 and, to date, Class Counsel have incurred $241,195.67 in actual out-of-pocket expenses.  *See* Ho Fee Decl. ¶¶ 36, 38; Fay Fee Decl. ¶ 15; and Menken Fee Decl. ¶ 22.  Summaries of these costs by firm are attached to Class Counsel's declarations.  *See* Ho Fee Decl. Ex. 1; Fay Fee Decl. Ex. 2; Menken Decl. Ex. B.  The costs to be reimbursed are routinely reimbursed litigation costs that are typically charged to fee-paying clients, including: filing fees; copying; postage; computerized legal research charges; the cost of the mediator; expert witness costs, and extensive document management and processing costs.  Ho Fee Decl. ¶¶ 36-37; Fay Fee Decl. ¶¶ 13, 15; and Menken Fee Decl. ¶ 22.  ; *see also* Fed. R. Civ. P. 23(h); *Harris*, 24 F.3d at 19 (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.).

The larger expenses that were necessarily incurred by Class Counsel include costs for expert witnesses, for extensive document management and processing, and for deposition transcription and court reporting services.  Together these costs comprise $174,428.78 in actual expenditures incurred by Class Counsel.  These expert costs were necessitated by the complexity of the damages model that Plaintiffs had to construct and by SimplexGrinnell's vociferous and aggressive attacks of Plaintiffs'

21

1   damages expert, which required the generation of four expert damages reports, that our expert sit for

2   two depositions, and numerous hours of consultation with him regarding multiple motions to strike his

3   testimony and to respond to SimplexGrinnell's own damages expert.  In addition, because

4   SimplexGrinnell only maintained paper time sheets at each of their California offices, Plaintiffs

5   incurred significant costs to collect, scan, manually code, and then inventory over 61,000 pages of time

6   sheets from seven field office spread all over California to create a complete damages calculations.

7   Combined, these two costs totaled approximately $132,604.17.  Ho Fee Decl. ¶ 37.  The other largest

8   expense incurred by Class Counsel was the cost of deposition transcripts and court reporting services

9   over the course of this four-year old case.  Those costs totaled approximately $41,824.61.  *Id.*  While

10  these three categories of costs were significant, they were also necessarily incurred in the prosecution

11  of Plaintiffs' claims and thus, are reimburseable.

12          Class Counsel further expect to incur additional expenses in filing the instant motion, filing the

13  final approval papers, securing final approval, and ensuring the distribution of settlement monies.

14  Class Counsel will provide an accounting of incurred costs at final approval.  In the event Class

15  Counsel's costs exceed the requested amount of $300,000 they will not seek any additional

16  reimbursement.

17  **G.    The Service Awards To The Class Representative Plaintiffs Are Reasonable.**

18          The Court should also approve the requested $5,000 service award to Class Representatives

19  Darren Scott, Jon Hotzler, Gary Charles Backlund, and Jose D. Valdez because the awards are just,

20  fair, and reasonable.  California courts regularly approve incentive awards for class representatives to

21  "be compensated for the expense or risk they have incurred in conferring a benefit on other members

22  of the class."  *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1394 (2010) (quoting

23  *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 806 (2009)); *see also Bell v. Farmers Ins.*

24  *Exch.*, 115 Cal. App. 4th 715, 725-26 (2004) (upholding service payments to class representatives);

25  *Munoz v. BCI Coca-Cola Bottling Co. of L.A.*, 186 Cal. App. 4th 399, 412 (2010) (upholding incentive

26  awards to plaintiffs that, when added to their individual recoveries, amounted to more than twice as much

27  as the average payment to class members).

28

580670.19

The requested service awards are reasonable because courts in this district generally find $5,000 service awards to be presumptively reasonable. *See, e.g., Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (noting that for service awards "$5,000 is a reasonable amount").

In deciding whether to approve an incentive award, a court should also consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th at 1394-95 (internal quotation marks omitted); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (applying similar factors to determine reasonableness of service payments).  All of these factors support the requested service award.

Here, all four Class Representatives took on substantial risk in bringing this class action and exposed themselves to notoriety and personal difficulties from serving as the representative Plaintiffs in this lawsuit.  Those risks included damage to their professional reputation for suing their current or former employer.  Declaration of Darren Scott ISO Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award ("Scott Decl.") ¶ 10; Declaration of Jon Hotzler ISO Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award ("Hotzler Decl.") ¶ 9; Backlund Decl. ¶ 10; Valdez Decl. ¶ 10.  It is well established that plaintiffs in the employment context "face[] the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013).  The Class Representatives also bore the significant financial risk of SimplexGrinnell's costs in the event they lost at trial.  Scott Decl. ¶ 10; Hotzler Decl. ¶ 9; Backlund Decl. ¶ 10; Valdez Decl. ¶ 10.  This financial risk, for a case litigated over four years, could easily total hundreds of thousands of dollars.  Ho Fee Decl. ¶ 41.

580670.19

1    The Class Representatives also spent a significant amount of time actively prosecuting this

2  action over four years.  Their efforts included assisting with case investigation, sitting for a day-long

3  deposition, responding to multiple written discovery requests, reviewing and approving various

4  complaints, assisting in the preparation and evaluation the case for mediation, and evaluating and

5  approving the proposed settlement on behalf of the Settlement Class.  These tasks required substantial

6  time commitments of all Class Representatives, which they estimated to be: 67-77 hours for Scott, 44

7  hours for Hotzler, 78-88 hours for Backlund, and 62 hours for Valdez.  Scott Decl. ¶ 9; Hotzler Decl.

8  ¶ 8; Backlund Decl. ¶ 9; Valdez Decl. ¶ 9.  The commitment of the Class Representatives is further

9  underscored by the fact that this case was filed four years ago and without the benefit of this

10  Settlement, likely would have continued in litigation for several more.  These requested service awards

11  are fair reimbursement for these efforts.

12    In addition, Class Representatives did not enjoy any personal benefit from the litigation.

13  Rather, they sacrificed the pursuit their own individual claims against SimplexGrinnell in order to

14  advocate for the claims of the Class.  Ho Fee Decl. ¶ 41.  Moreover, Class Representatives' receipt of

15  their service awards is contingent upon executing a general release, not required of the other Class

16  Members.  *Cf. Radcliffe v. Experian Info. Solution, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) (rejecting

17  requested service award that was result of collusive arrangement, which is not present here).  Thus, by

18  actively pursuing this action, Class Representatives have furthered the twin California public policy

19  goals of enforcing the Labor Code and making appropriate use of the class action device.  *See Sav-on*

20  *Drug Stores, Inc. v. Super. Ct*., 34 Cal. 4th 319, 340 (2004).

21    The reasonableness of the requested $5,000 service awards is further confirmed by the fact that

22  they constitute only 0.4% of the total $4,900,000 Settlement fund and are commensurate with the

23  average Class Member recovery of $4,920.26.  Ho Fee Decl. ¶ 41.  Courts routinely award service

24  awards that are multiples of the expected average Class Member award, which is far more than the

25  requested awards here.  *See, e.g., Harris*, 2012 WL 381202, at *8 (awarding service payment of

26  $12,500 where average class award was approximately $100).  Critically, not one Class Member has

27  objected to this requested service award despite receiving Notice of it 45 days ago and

28  SimplexGrinnell does not oppose either.  Ho Fee Decl. ¶ 6.

---

24

1   This requested service award is also less than the awards approved by courts in other similar

2   wage and hour cases. *See*, *e.g.*, *Willner*, No. 11-cv-02846-JST (N.D. Cal. June 22, 2015) (approving

3   service award of $7,500 for single class representative who invested significant time over a four-year

4   case, risked her reputation and work opportunities, and signed a broader release than the class); *Rulli*,

5   No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (approving service awards of $7,500 for each class

6   representative in wage and hour settlement); *Ozga v. U.S. Remodelers, Inc*., No. C 09-05112 JSW,

7   2010 WL 3186971, *2 (N.D. Cal. Aug. 9, 2010) (awarding $10,000 incentive award to both named

8   plaintiffs); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th at 1393-94 (approving incentive

9   awards of $10,000 to each class representative).

10   Accordingly, all of these factors support the approval of Plaintiffs' requested $5,000 service

11   awards for each of the four Class Representatives.

12   **IV.   CONCLUSION**

13   For the foregoing reasons, the Court should award Class Counsel attorneys' fees in the amount

14   of $1,900,000, costs of up to $300,000, and award $5,000 to each of the four Class Representative

15   Plaintiffs for their service as Class Representatives in accordance with the Settlement Agreement.

16   Dated:  June 23, 2015                     Respectfully submitted,

17                                             GOLDSTEIN BORGEN DARDARIAN & HO

18                                             ___/s/ James Kan_____
19                                             James Kan

20                                             Attorneys For Plaintiffs and the Settlement Class

21

22

23

24

25

26

27

28

PLS.' MOT. FOR ATT'YS' FEES, COSTS & SERVICE AWARDS – CASE NO. 11-01854-JST

580670.19